**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

CHARLES JACKSON                                                                                       PLAINTIFF

V.                                                                          CIVIL ACTION NO. 1:14-CV-35-SA-DAS

LOWNDES COUNTY SCHOOL DISTRICT                                                      DEFENDANT

**MEMORANDUM OPINION**

Plaintiff Charles Jackson pursues this action against his employer Lowndes County School District ("LCSD"), seeking to recover for alleged race discrimination and retaliation under Title VII, 42 U.S.C. § 1981, and the Fourteenth Amendment. Pending now before the Court is Defendant's Motion for Summary Judgment [44]. The Court has considered the motion, responses,[1] rules, and authorities, and finds as follows:

*Facts and Procedural History*

Plaintiff, who is white, has been employed with Defendant for 19 years, serving primarily as assistant principal of West Lowndes High School ("WLHS"), a school with a majority black student population.[2] In 2008, Plaintiff filed a lawsuit against Defendant in this Court, alleging that he was passed over for the position of principal of West Lowndes Middle School on the basis of his race. *See Jackson v. Lowndes Cnty. Sch. Dist.*, No. 1:08CV178-SA, 2010 WL 91245, at *1, *7 (N.D. Miss. Jan. 6, 2010) (granting in part and denying in part summary judgment). After a settlement out of court, Plaintiff continued his employment as assistant principal at WLHS.

---

[1] Plaintiff has moved for leave to supplement his response with a newly-acquired affidavit and two recent opinions from the Fifth Circuit. These motions [52, 54] are hereby GRANTED, and the Court has considered the evidence, as well as the pertinent authorities.

[2] For the 2014-15 school year, two hundred twenty-three students were black, and two were white.

In July 2012, the black principal at WLHS retired, creating a vacancy for the upcoming school year. The District Superintendent Lynn Wright interviewed Plaintiff to fill the position on an interim basis, with an expressed expectation that Plaintiff would eventually be approved by the school board as permanent principal of WLHS. Plaintiff never received such approval.

Plaintiff complains of three alleged employment actions surrounding his tenure as interim principal of WLHS. First, at a board meeting in August 2012 in which one of the five board members was absent, Wright proposed that the board officially name Plaintiff as the interim principal of WLHS. Even though Plaintiff was already acting in that capacity, the action failed due to a deadlocked vote of 2-2. The full board approved him as interim principal two months later by a vote of 3-2.

Second, in February 2013, the board held a vote on Wright's recommendation to remove Plaintiff's interim label and make him permanent principal of WLHS. Two white board members voted in favor of making Plaintiff principal. One black board member, Jacqueline Gray, and two white members, Robert Barksdale and Wesley Barrett, voted against Wright's recommendation. The board then voted to appoint Plaintiff as a general administrator for the District, which vested Wright with the discretion to assign Plaintiff to various administrative positions within the District. Wright exercised his discretion by reassigning Plaintiff to WLHS as interim principal, where Plaintiff remained for the 2013-14 school year.

Third, in 2014, Plaintiff was transferred from his position of interim principal at WLHS to become principal at an alternative school in the District.[3] Defendant asserts that Plaintiff requested this transfer, but Plaintiff testified that he only agreed to accept the job on certain terms that were not met. At the same time, a black individual, Cynthia McMath, was hired as

---

[3] The record evidence is unclear concerning the specifics of this transfer, i.e., whether Plaintiff was approved by board vote and what the final tally of that vote may have been.

principal of WLHS. According to Wright, McMath was approved by unanimous vote of the board.

Plaintiff then initiated this suit, pursuing claims of race discrimination and retaliation under Title VII, Section 1981, and the Fourteenth Amendment. In its summary judgment motion and briefing, Defendant has not contested the Fourteenth Amendment claims, and they are accordingly not at issue at this time. The Court will now address Plaintiff's Title VII and Section 1981 discrimination and retaliation claims.

*Summary Judgment Standard*

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals no genuine dispute regarding any material fact and the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "set forth 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Importantly, conclusory allegations, speculation,

unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little*, 37 F.3d at 1075.

*Discussion and Analysis*

The Supreme Court has explained that every singular incident "of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice' within the meaning of Title VII." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002); *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 70-73, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006) (separately analyzing two claimed adverse employment actions). Thus, Plaintiff alleges retaliation and discrimination under Title VII and Section 1981 with respect to *each* of the three employment actions he challenges.

Seeking to support his claims with circumstantial evidence, Plaintiff must navigate the *McDonnell Douglas* burden-shifting framework. *Jackson v. Frisco Indep. Sch. Dist.*, 789 F.3d 589, 597-601 (5th Cir. 2015) (applying *McDonnell Douglas* framework to discrimination claim and retaliation claim under Title VII); *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) ("The legal framework governing [retaliation claims under Title VII and those under Section 1981] is coextensive."); *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 281 n.7 (5th Cir. 2004) ("We have previously held that race discrimination claims brought pursuant to section 1981 are governed by the same evidentiary framework applicable to employment discrimination claims under Title VII.").

The contours of *McDonnell Douglas* require Plaintiff to first raise a presumption of unlawful termination by establishing a prima facie case. *Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 156 F.3d 581, 587 (5th Cir. 1998). If he succeeds, Defendant must rebut this presumption by producing a legitimate non-discriminatory reason for the adverse employment action at issue. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 345 (5th Cir. 2007). If Defendant provides a sufficient reason, the burden "shifts back to the plaintiff to present substantial evidence that the employer's reason was pretext." *Id.* For purposes of the discrimination claims, Plaintiff may also discharge his final burden by demonstrating that "the protected characteristic was a motivating factor in the employment decision . . . ." *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005). On his retaliation claims, however, motivating factor causation is not enough; Plaintiff must produce evidence from which a jury could find that "but-for" the allegedly wrongful action of the employer, the "unlawful retaliation would not have occurred . . . ." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, --- U.S. ---, 133 S. Ct. 2517, 2533, 186 L. Ed. 2d 503 (2013).

The race discrimination claims involve different prima facie elements than do the retaliation claims, and they will be addressed separately. The Court will then merge the analysis of the discrimination and retaliation claims in addressing whether Defendant has met its burden of producing legitimate reasons for the challenged employment actions and whether Plaintiff has demonstrated that such reasons are pretextual.

<u>Prima Facie Case—Race Discrimination</u>

To establish a prima facie case of race discrimination, Plaintiff must show that he (1) suffered an adverse employment action, (2) was qualified for the position at issue, (3) belongs to a protected class, and (4) either received less favorable treatment than similarly situated

employees outside the protected class or was replaced by a person outside the protected class. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). This test, tailored to Plaintiff's claims that he was passed over for a promotion, require a showing that "(1) he was not promoted, (2) he was qualified for the position he sought, (3) he fell within the protected class . . . , and (4) the defendant either gave the promotion to someone outside the protected class or otherwise failed to promote the plaintiff because of his race." *Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 346-47 (5th Cir. 2013) (citing *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002)). It is uncontested for summary judgment purposes that Plaintiff was qualified for the position and that he fell within the protected class.

Defendant argues that Plaintiff has not suffered the required adverse employment action or non-promotion. For claims of discrimination, the Fifth Circuit has held that adverse employment actions include "'ultimate employment decisions' such as hiring, firing, demoting, promoting, granting leave, and compensating." *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 503 (5th Cir. 2014). Actions that do "not affect job duties, compensation, or benefits" are not considered adverse employment actions. *Id.* (quoting *Pegram*, 361 F.3d at 281-82).

To demonstrate an adverse employment action, Plaintiff first highlights the board meeting in August 2012. At the time, and at Wright's request, Plaintiff had been acting as interim principal of WLHS. On August 10, the board held a meeting in which Wright proposed to make Plaintiff interim principal of WLHS by board action. Because the vote was tied 2-2, the motion failed. Plaintiff contends this stalled vote constituted an adverse employment action.

It is undisputed, however, that following the vote, Plaintiff continued to be employed as acting interim Principal of WLHS, and that two months later, the board voted 3-2 to officially approve Plaintiff as interim principal. There is no evidence that Plaintiff received less pay,

6

performed different duties, was under a shorter expected term, or in any way experienced differing circumstances of employment before he received board approval. Accordingly, his claims based on the stalled August 2012 vote must be dismissed for lack of adverse employment action. *See Pegram*, 361 F.2d at 283 (holding claim that reassignment was less desirable would be insufficient absent showing that new transfer was accompanied by lost compensation, duties, or benefits).

Plaintiff next asserts that the board's February 2013 vote against making him principal at WLHS constituted an adverse employment action for discrimination purposes. Under Fifth Circuit precedent, "[i]t is . . . well established . . . that the denial of a promotion *is* an actionable adverse employment action." *Alvarado v. Tex. Rangers*, 492 F.3d 605, 612 (5th Cir. 2007). Defendant argues, however, that Wright's subsequent decision to retain Plaintiff as WLHS interim principal means that no failure to promote occurred. This argument strains the Court's credulity, as the vote at issue was on an action to remove the interim label and make Plaintiff the permanent principal of WLHS, implicating a much different level of tenure than would exist as mere interim. A jury could find this to be a failure to promote, constituting the requisite adverse employment action to support a discrimination claim. *See Foley v. Univ. of Hous. Sys.*, 355 F.3d 333, 340 (5th Cir. 2003) ("[Plaintiff's] non-promotion[s] from associate professor to the rank of full professor . . . represented adverse employment actions."); *Khan v. S. Univ. A & M Coll.*, No. 5:00CV255-DEW, 2006 WL 845763, at *4 (W.D. La. Mar. 29, 2006) ("[Plaintiff]'s non-promotion from interim Assistant Chief of Police to permanent Assistant Chief of Police . . . [represents an] adverse employment action[].").

Plaintiff also asserts that he suffered an adverse employment action in 2014 by being transferred from interim principal of WLHS to principal of the alternative school. Defendant

appears to argue that the transfer was not adverse, given that Plaintiff allegedly requested the position. There is, however, a factual dispute in this regard. Though Wright testified that Plaintiff volunteered for the alternative school position, Plaintiff testified that he agreed to the transfer only upon certain conditions regarding staffing, and that those conditions were not met. Plaintiff explained that, as one of these conditions, he would only accept the transfer if he did not have to answer to Dr. Peggy Rogers, an administrator who had been over the alternative school for years. This was because, according to Plaintiff, Rogers "has a problem with all the white administrators in the district." However, Rogers was not removed from her supervisorial role over the alternative school, and Plaintiff allegedly informed Wright that he was no longer interested in the transfer.

There is also evidence that Plaintiff receives less compensation at the alternative school than he would have had he remained interim principal at WLHS. Wright testified that base-pay for principals within the district is the same across the board, but that each principal is paid an additional stipend that is contingent on the number of certified staff members under the principal's supervision. Plaintiff testified, and Wright acknowledged, that the alternative school principal has fewer certified staff members and therefore receives a smaller stipend than the other principals in the district. Defendant points to the fact that Plaintiff actually received a raise upon transfer to the alternative school, but Plaintiff explained (and Defendant does not dispute) that a raise was given to "everybody in the district" for the 2014-15 school year. Hence, the Court finds there to be a factual question as to whether Plaintiff indeed lost compensation by being transferred to the alternative school. *See Pegram*, 361 F.3d at 284 (holding evidence of different incentive pay structures between former position and current position created a genuine issue of fact as to whether transfer was adverse employment action).

8

Based on the foregoing, the Court finds that Plaintiff has presented sufficient evidence that the latter two employment actions—the non-promotion from interim to principal and the transfer to the alternative school—constituted adverse employment actions for purposes of Plaintiff's prima facie case.

Defendant additionally argues that Plaintiff has failed to satisfy the final element of prima facie discrimination, contending that the principal's position was not given to someone outside Plaintiff's class because Plaintiff was not required to take the alternative school job and could have therefore stayed as interim principal at WLHS. Yet Defendant has presented no evidence that Plaintiff could have remained at WLHS by refusing the alternative school position. And more importantly, Defendant concedes that Cynthia McMath, who is black, became principal of WLHS after Plaintiff's transfer to the alternative school. Accordingly, the Court finds this element to be established, and that Plaintiff has made out a prima facie case of race discrimination with respect to the 2013 non-promotion and 2014 transfer.

Prima Facie Case—Retaliation

In order to demonstrate prima facie retaliation, Plaintiff must show that "[1] he engaged in a protected activity, [2] an adverse employment action occurred, and [3] there was a causal link between the protected activity and the adverse employment action." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 657 (5th Cir. 2012). Defendant asserts that Plaintiff cannot establish an adverse employment decision, but has not contested either that Plaintiff engaged in a protected activity through the filing of the previous lawsuit, or that he can establish a causal link between this protected activity and the challenged employment decisions.

The Supreme Court has held that, unlike in the discrimination context, a Plaintiff is not required to show an "ultimate employment decision" to prevail on a retaliation claim.

9

*Burlington*, 548 U.S. at 61, 126 S. Ct. 2405. Rather, for a retaliation claim, Plaintiff must only show that "a reasonable employee would have found the challenged action materially adverse, which . . . means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68, 126 S. Ct. 2405; *see also McCoy*, 492 F.3d at 560-61 (applying more lenient "materially adverse" standard to Title VII retaliation claims as opposed to requiring plaintiff show an ultimate employment decision); *Mendoza v. Helicopter*, 548 F. App'x 127, 129-30 (5th Cir. 2013) (applying "materially adverse" standard to Section 1981 retaliation claim).

While the standard for an adverse employment decision is somewhat different in the retaliation context, the Court reaches the same conclusions as it did in the discrimination context. The first challenged employment action—the board's delay in approving Plaintiff as interim principal—is not "materially adverse," as Plaintiff has presented no evidence that his employment changed in any way that would dissuade a reasonable worker from filing a race discrimination suit. This claim is, therefore, dismissed. Conversely, the non-promotion of plaintiff from interim principal to principal and the later alleged forced transfer to the alternative school both satisfy the more lenient "materially adverse" standard for the same reasons the Court held them to be adverse employment actions under the more difficult standard in the discrimination context.

Accordingly, the Court finds that Plaintiff has satisfied the only contested element of his prima facie case of retaliation with regard to the 2013 non-promotion and the 2014 transfer.

<u>Legitimate Non-Discriminatory Reasons</u>

Because Plaintiff has established an inference of discrimination and retaliation by meeting his prima facie burdens, Defendant is tasked with advancing legitimate non-

10

discriminatory and/or non-retaliatory reasons for the employment actions taken. *Turner*, 476 F.3d at 345. To meet its burden, it is axiomatic that Defendant must "articulate a nondiscriminatory reason *with 'sufficient clarity'* to afford the employee a realistic opportunity to show that the reason is pretextual." *Patrick v. Ridge*, 394 F.3d 311, 317 (5th Cir. 2004) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255-56, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)). In its briefing, however, Defendant has made no attempt to present a legitimate reason for the transfer of Plaintiff from WLHS to the alternative school. Thus, Plaintiff's claims of discrimination and retaliation based on the 2014 transfer survive summary judgment. *See Alvarado*, 492 F.3d at 618 (finding that failure to rebut plaintiff's prima facie case "pretermits summary judgment dismissal of [plaintiff's] action, leaving the ultimate question of discriminatory animus to be determined by the trier of fact.").

As to the denied promotion from interim principal to principal of WLHS, Defendant asserts, as legitimate justification, deposition testimony given by each of the three board members that voted against Plaintiff—Barksdale, Gray, and Barrett.[4] Barksdale testified that while Plaintiff was assistant principal, WLHS had received poor test scores, and he wanted to learn whether test scores had improved before officially extending the job to Plaintiff. Gray testified that her constituents requested that a formal interview process precede the hiring of a principal, and that such a process had not occurred. Barrett similarly testified that he desired an interview process to take place before naming a principal at WLHS. In view of this testimony, the Court finds that Defendant has met its burden of producing legitimate nondiscriminatory justification for Plaintiff's February 2013 non-promotion. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) (noting Defendant's burden as "one of production, not persuasion" and involving "no credibility assessment")

---

[4] There is no evidence that the members provided Plaintiff with reasons for their nay votes until discovery.

11

(citation and quotation omitted). Thus, the burden shifts to Plaintiff to show pretext. *Keelan*, 407 F.3d at 341.

Pretext

As a basis for pretext, Plaintiff argues that the board members who voted against making him principal failed to timely supply their reasons. According to Wright, he and the school board attorney both insisted that Barksdale, Gray, and Barrett provide a reason for rejecting his recommendation, but the board members did not comply with the requests, and there is no evidence that they supplied justification for their nay votes until their depositions. In a similar situation, the Eleventh Circuit found that pretext had been demonstrated when an employer refused, after being asked, to give a reason for the plaintiff's termination, and informed plaintiff later by letter that he was fired for unacceptable performance. *Mock v. Bell Helicopter Textron, Inc.*, 196 F. App'x 773, 774 (11th Cir. 2006). Citing *Mock*, the Fifth Circuit recently suggested that such a refusal to supply a reason may demonstrate that a subsequently advanced justification is pretextual. *See Squyres v. Heico Cos., LLC*, 782 F.3d 224, 234-35 & n.6 (5th Cir. 2015). That Court went on to distinguish *Mock*, however, because the employee in *Squyres* did not request the reason for his non-renewal. *Id.* Here, according to Wright, he and the board attorney *did* request a reason for Plaintiff's termination, and the members refused. Such refusal may, like in *Mock*, be sufficient to demonstrate that the justifications, advanced for the first time during discovery, are pretext.

Even if the board members' initial silence were not alone sufficient, there is additional evidence of pretext here. Gray's stated reason, that her constituents requested a formal interview process, has faced significant contradiction. According to Wright, Gray personally told him that she opposed Plaintiff because (1) he previously reported an ineligible player on the WLHS

12

football team, which caused the team to vacate wins; and (2) he told a bus driver that a student could be suspended if the driver would write up the student one more time. But, as stated above, Gray posited in her deposition that she opposed Plaintiff because her constituents wanted a formal interview process. When asked repeatedly at her deposition the name or names of any person who had requested such an interview, she was unable to identify anyone. Moreover, Plaintiff testified, and Defendant does not contest, that no formal interview process was conducted for McMath, the black individual who ultimately became principal at WLHS.

In addition, Plaintiff testified that Superintendent Wright relayed to him that Gray said she would never vote for Jackson to be principal at WLHS because of the previously filed lawsuit.[5] When questioned about this topic in his deposition, Wright did not deny that Gray made this statement, and in fact acknowledged that the topic of the previous lawsuit may have come up in a conversation he had with Gray. Plaintiff also introduced an affidavit from a former Lowndes County Deputy who averred that while at a football game in 2005, he overheard Gray say "there would never be a white principal at West Lowndes High School."

The Court further notes Plaintiff's testimony that Barrett, who cast the third nay vote at the February 2013 meeting, was told to do so by Gray.[6] Barrett denied he received such communication from Gray, but testified that he voted against Plaintiff because "it was just stated in the meeting . . . that they would have an interview process and I felt that that would give open-

---

[5] Given that Wright and Gray were agents of the school district and directly involved in the employment decision at issue, the Court finds that their alleged statements qualify as statements of a party opponent for summary judgment purposes such that Plaintiff's deposition testimony on this point is not hearsay. *See* FED. R. EVID. 802(d)(2)(D); *Wilkerson v. Columbus Separate Sch. Dist.*, 985 F.2d 815, 818 & n.11 (5th Cir. 1993) (holding that former white employee's testimony that school board president told him a black school board member made a racially charged comment was not hearsay, since that the board president and board member were both "agents of the school district").

[6] Plaintiff testified that he attended the February 2013 meeting and has thus demonstrated, for summary judgment purposes, his personal observation of Gray's alleged statement.

--opportunities for the best candidate for the job . . . ." The fact that no formal committee interview had been conducted is, of course, the very reason that Gray advances for voting against Plaintiff. Although the Court finds scant evidence that Barrett acted from personal discriminatory or retaliatory motives, if Plaintiff can demonstrate at trial that one with discriminatory intent "had influence or leverage over the official decisionmaker" then it may be "proper to impute . . . discriminatory attitudes to the formal decisionmaker." *Russell v. Univ. of Tex. of Permian Basin ("UTPB")*, 234 F. App'x 195, 203 (5th Cir. 2007) (quoting *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226 (5th Cir. 2000) (alteration in original); *Dulin v. Bd. of Comm'rs of Greenwood Leflore Hosp.*, 586 F. App'x 643, 649 (5th Cir. 2014) (finding that jury was entitled to believe that persons exhibiting racial animus could exert influence over board); *see also Roque v. Natchiotoches Parish Sch. Bd.*, 583 F. App'x 466, 467 (5th Cir. 2014) (Jolly, J., concurring) (explaining, in context of panel's reversal of summary judgment, that plaintiff was required to show improper influence over other board members' decisions in order to succeed at trial).

Defendant argues that evidence relating to the votes of two members of a five member board is insufficient to show that the District acted impermissibly. The Fifth Circuit has not specifically addressed whether liability may be predicated on the allegedly biased votes of less than a majority of the members of multi-member board. At least three potentially applicable conceptual approaches to analyzing such group decisions have arisen.

The most lenient approach may allow for an inference of discrimination if Plaintiff submits evidence that one vote was cast for impermissible reasons. *See Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 786 (2d Cir. 2007); *Haka v. Lincoln Cnty.*, 533 F. Supp. 2d 895, 914 (W.D. Wisc. 2008). In an unreported case, the Fifth Circuit implicitly rejected use of this approach, holding evidence that one member of a six-person search committee harbored

14

discriminatory motives to be insufficient to create an inference of gender discrimination, especially given that the committee's selection was unanimous. *UTPB*, 234 F. App'x at 203-04. *UTPB* is clearly at odds with the lenient approach.

Two other approaches, however, remain viable under Fifth Circuit precedent. Under an intermediate, outcome-based approach, the employer may be liable if the allegedly biased vote or votes supplied the deciding margin. *See Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 262 (6th Cir. 2006) (in First Amendment retaliation case, recognizing the Second, Third, and Ninth Circuits as having implied use of the deciding vote approach and finding municipal liability for 4-2 vote against plaintiff where there was evidence that three members had improper motivation); *Buck Foston's New Brunswick LLC v. Cahill*, No. 11-03731-FLW, 2013 WL 5435289, at *22 (D.N.J. Sept. 27, 2013) (finding summary judgment improper on First Amendment claim when plaintiff introduced evidence that one person in 2-1 vote was biased); *Kendall v. Urban League of Flint*, 612 F. Supp. 2d 871, 881 (E.D. Mich. 2009) (applying intermediate approach to Section 1981 claim, but finding insufficient evidence of biased votes).

The strictest approach requires Plaintiff to prove that a majority of the board members possessed discriminatory motives and voted against the plaintiff. *Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1313 (11th Cir. 2006) (holding trial judge erred in denying Rule 50 motion on Section 1983 claim in the absence of "any evidence showing that a majority of the members of the . . . Planning Commission . . . acted with an unconstitutional motive").

The Court finds two persuasive reasons to apply the intermediate outcome-based approach here. First, though the Fifth Circuit in *UTPB* did not articulate a standard to apply, it took special note of the fact that the search committee's vote was unanimous. *Id.* at 203. Similar appellate opinions attaching significance to such unanimity were read by the Sixth Circuit in

*Scarbrough* as implicitly adopting the intermediate approach. 470 F.3d at 262 (collecting cases). Indeed, if the Fifth Circuit followed the strictest approach, the margin of the final vote would not be relevant, as the only question involved would be whether a majority of the board's members were biased and voted against Plaintiff. Thus, the intermediate approach is most consistent with Fifth Circuit precedent.[7]

This approach also finds support in the applicable causation standards. As set out above, for Plaintiff's discrimination claims, he must prove, at a minimum, that his race was a motivating factor in the decision not to promote him to principal. *Keelan*, 407 F.3d at 341. And on his retaliation claims, he must ultimately show that but-for his previous lawsuit, he would not have been terminated. *Nassar*, 133 S. Ct. at 2533, 186 L. Ed. 2d 503. The intermediate approach— which isolates the causal effect that the allegedly biased vote or votes had on the outcome—is most consistent with the motivating factor and but-for causation analyses. *See Scarbrough*, 470 F.3d at 262 (in the First Amendment retaliation context, recognizing the middle approach as most consistent with the *Mt. Healthy* "burden-shifting regime in which a key question [is] whether a board would have acted the same way, absent improper motive"). This is especially true, given the Supreme Court's recent emphasis that the question of causation, rather than decisionmaker culpability, is central to the determination of liability for employment discrimination. *Staub v. Proctor Hosp.*, 562 U.S. 411, 417, 419, 131 S. Ct. 1186, 179 L. Ed. 2d

---

[7] Another case of note is *Dulin v. Board of Commissioners of Greenwood Leflore Hospital*. There, in an opinion originally affirming this Court's grant of a Rule 50 Motion, the panel explained that the plaintiff was required to establish that a majority of the Board members votes were improperly motivated, especially since the vote was unanimous. *Dulin v. Bd. of Comm'rs of Greenwood Leflore Hosp. ("Dulin I")*, 646 F.3d 232, 237 (5th Cir. 2011). In dissent, Judge Barksdale disagreed with the panel's holding that a majority of board members were required, apparently endorsing the lenient or intermediate approach. *Id.* at 247-48. Subsequently, the unanimous panel withdrew its entire opinion and found "a triable issue of fact that requires a jury to decide fact and credibility issues." *Dulin v. Board of Com'rs of Greenwood Leflore Hosp. ("Dulin II")*, 657 F.3d 251, 251 (5th Cir. 2011). Though Judge Barksdale's dissent was never formally adopted, the Fifth Circuit panel later relied on much of his analysis in affirming a subsequent jury verdict in the plaintiff's favor. *Dulin v. Board of Com'rs of Greenwood Leflore Hosp., ("Dulin III")*, 586 F. App'x 643, 646, 648-49 (5th Cir. 2014).

144 (2011) (holding in case under Uniformed Services Employment and Reemployment Rights Act, which is "very similar to Title VII," that employer could be liable for non-decisionmaker's conduct so long as "the adverse action is the intended consequence of that agent's conduct").

The Court finds the intermediate approach to be in harmony with Fifth Circuit authority and the schemes of Title VII and Section 1981, and accordingly chooses to apply it in this case. Therefore, by bringing forth summary judgment evidence that Gray voted against Plaintiff for improper reasons and that she may have influenced another board member's nay vote, Plaintiff has created a genuine issue of material fact as to whether the allegedly biased votes supplied the deciding margin in the 3-2 vote against him. *Scarbrough*, 470 F.3d at 262. For this reason, and based on the evidence that Barksdale, Gray, and Barrett initially refused to provide the reasons for their nay votes, the Court finds that Plaintiff has met his evidentiary burden of showing that his February 2013 non-promotion was a product of unlawful race discrimination or retaliation. Accordingly, summary judgment on those claims would be inappropriate.

*Conclusion*

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART. Plaintiff's Title VII and Section 1981 claims of race discrimination and retaliation based on the August 2012 failure to approve him as interim principal are dismissed for lack of an adverse employment action. All other claims survive. A separate order to that effect shall issue this day.

SO ORDERED, this 24th day of August, 2015.

/s/ Sharion Aycock
**UNITED STATES DISTRICT JUDGE**